GRAY, Adm'x, etc., *v.* NATIONAL STEAM-SHIP Co.

*(Circuit Court, S. D. New York.* May 5, 1881.)

1. TRANSFER OF TITLE TO STEAM-SHIP — DELIVERY — REGISTRATION — RES ADJUDICATA.

August 16, 1867, the defendant, a British corporation, made a written agreement with the Navigation Company, another British corporation, whereby the latter company, having, preparatory to a dissolution, transferred all its property to two liquidators, under the "companies' act, 1862," agreed, *inter alia*—(1) That for a valuable consideration to be paid, (afterwards paid,) "the Navigation Company and their liquidators will forthwith, by such means, deeds, acts, and assurances as may be necessary or expedient in that behalf, convey, deliver, and make over to the Steam-ship Company all such real and personal property, capable of assignment and transfer, as are comprised in, or make up, or pertain to, the several items appearing under the head of assets in the" books of the Navigation Company; (2) "the Steam-ship Company shall take such property subject to the several rights and equities therein subsisting, and, in particular, to the discharge of the several liabilities appearing in the said books, papers, and documents, and to all other liabilities to

which said property is now subject." August 16, 1867, and after the making of this agreement, the liquidators delivered to the defendant eight steam-ships, including the Pennsylvania, belonging to the Navigation Company, and the defendant thereafter dealt with said ships as its own property, but no formal written transfer or bill of sale of the vessels was made at the time, other than said written agreement. October 24, 1867, the plaintiff's intestate was killed by a collision between a canal-boat on which he was and the steam-ship Pennsylvania. October 31, 1867, the plaintiff brought suit against the *Navigation Company* for damages, and recovered judgment, upon which execution was issued and returned unsatisfied August 25, 1868; the defendant in the present suit having interposed its claim as owner of the said steamship. The plaintiff's intestate was part owner of the canal-boat, which became a total loss by the collision, and in November, 1867, the plaintiff filed a libel in admiralty, *in rem*, against the steam-ship Pennsylvania, claiming damages for the loss alleged to have occurred through the negligence of the persons navigating her, to which the defendant in the present suit filed an answer averring ownership of the vessel, and raising an issue as to the negligence alleged. The case was tried on its merits, and on April 26, 1869, the court dismissed the libel with costs. A bill in equity against the defendant being filed, praying for a sale of so much of the property of the Navigation Company transferred to defendant as might be necessary to pay the judgment recovered against the Navigation Company, it was *held:*

(1) That the instrument of August 16, 1867, accompanied by a delivery of the ships, was a sufficient transfer of the title of the ships to the defendant, so far as any cause of action growing out of said collision was concerned.

(2) That whether the registered title to the steam-ship Pennsylvania was altered to the defendant before or after August 25, 1868, when the execution was issued, was of no importance in this case, the plaintiff having persisted in the suit against the Navigation Company after full record notice, from the defendant's answer in the suit in admiralty, that the defendant and not the Navigation Company was the owner of the vessel at the time of the collision.

(3) That under the agreement of August 16, 1867, the defendant was under no liability to pay this judgment. It was not a liability of the Navigation Company on that day, nor is it founded on any liability which then existed or had accrued.

(4) That there was no identity between the two companies for the purpose of the equitable satisfaction by the new company of the judgment against the old company. As to causes of action arising after August 16, 1867, the defendant took the property, not as trustee for the Navigation Company, but as its own, and became liable to respond only in suits directly against itself.

(5) That the judgment against the Navigation Company, though involving the question as to whether the Pennsylvania belonged to that company at the time of the collision, is not *res adjudicata* as

against the defendant. The fact that the defendant was transferee of the vessel did not make it either a party or a privy to the suit, or a trustee for the old company in respect of the cause of action, the suit being one *in personam.*

(6) That the proceedings in the admiralty suit could not operate as *res adjudicata.* The cause of action was different from that in the *in personam* suit, and the judgment in the latter suit was recovered before the decree in the admiralty suit was entered.

*Henry Morrison,* for plaintif.

*John Chetwood,* for defendant.

BLATCHFORD, C. J. On and before the sixteenth of August, 1867, the National Steam Navigation Company, limited, (and which will be called the Navigation Company,) was a British corporation. On that day a written agreement was made between it of the first part, William Rowe and Charles Edward Dixon of the second part, and the National Steamship Company, limited, a British corporation, (and which will be called the Steam-ship Company,) of the third part. This agreement recites—

That on the ninth of July, 1867, the Navigation Company duly passed a resolution in conformity with "the companies' act, 1862," to the effect that that company be wound up voluntarily as and from the fifteenth of August, 1867, and that the said Rowe and Dixon be appointed liquidators for that purpose, and that a new company called the Steam-ship Company, limited, had been duly formed and registered, with a capital of £1,000,000, divided into 75,000 shares of £10 each, and 25,000 preferential shares of £10 each, and that it was proposed to transfer to such new company the whole of the business and property of the Navigation Company in consideration of the allotting, by the new company, of 60,000 shares in it, credited with £10 per share paid, for the purpose of distribution among the members of the Navigation Company, or otherwise, for its benefit, and assuming all its liabilities, and also making provision for all matters which might arise in the liquidation of the Navigation Company, and that the proposed transfer was thereby approved, and that an authority was thereby conferred on the liquidators to accept such 60,000 shares in the new company, each credited with £10 as paid up thereon, for the purpose of distribution among the members of and for the benefit of the Navigation Company.

The agreement also recites that the Steam-ship Company had been incorporated under the provisions of the companies' act, 1862, with a memorandum and articles of association, extracts from which it sets forth. These extracts show—

That the name of the company is "The Steam-ship Company, limited;" that the objects for which it is established are, among other things, the purchasing and taking over, for the sum of £600,000 in its paid-up shares of £10 each, all the business, ships, or vessels subject to such liabilities of the Navigation Company, and the sailing and managing of ships or vessels of iron or wood of every description; that its capital is £1,000,-000, divided into 75,000 original shares of £10 each, and 25,000 preferential shares of £10 each; that it is established for the purpose of purchasing and taking over the business and assets of the Navigation Company, subject to the payment of all its existing liabilities, on the terms that there be allotted to each member of the Navigation Company, in respect to every share held by such member in it, three shares in the new company of £10, fully paid up, and that there be also offered to each such member, in respect to each share so held by him, a preferential share of £10, in respect of which the sum of 10 shillings shall be paid by him on the allotment and acceptance by him of such preferential shares; that 60,000 of the original shares shall be offered at par as fully paid-up shares, so that three of them shall be offered to the holders of each share of £100, on which £30 has been paid up in the Navigation Company, in exchange for each such share, and the remaining 15,000 original shares and 5,000 preferential shares shall be issued only under the circumstances thereinafter mentioned; that the directors shall first offer 20,000 of the preferential shares, *pro rata*, to such holders of shares in the Navigation Company as shall agree to exchange their shares into fully paid-up shares in the new company, but in case any of the members of the Navigation Company shall decline to receive the same, or neglect to accept the same, the directors shall issue such remaining shares, from time to time, to such persons as they may think fit; that it shall be lawful for the directors to issue any portion of the remaining 15,000 original shares and 5,000 preferential shares for the purpose of enabling them or the Navigation Company to carry out a specified contract, made April 18, 1866, to which the Navigation Company was a party, if they shall deem it expedient so to do, provided that no one preferential share be offered to each holder of three of the remaining 15,000 original shares; that certain specified dividends shall be made on the preferential shares, and the holders of them shall be entitled to certain specified rights, in case the company shall be wound up, and that no further calls shall be made in respect of the original £10 shares, but certain specified calls may be made as regards the preferential shares.

## The agreement also recites—

That the assets and property of the Navigation Company consist of certain ships and other property, all of which are disclosed by its books, papers, and documents, which have been laid before the liquidators and the Steam-ship Company; that there are also certain liabilities of the Navigation Company, also disclosed by the same books, papers, and documents, as the same have been laid before the liquidators and the Steamship Company; and that by special resolution "The Steam-ship Company; limited," has changed its name, and now is "The National Steam-ship Company, limited."

The agreement then provides as follows:

(1) The Navigation Company and their liquidators will forthwith, by such means, deeds, acts, and assurances as may be necessary or expedient in that behalf, convey, deliver, and make over to the Steam-ship Company all such real and personal property, capable of assignment and transfer, as are comprised in, or make up, or pertain to, the several items appearing under the head of assets in the said books, papers, and documents, and which books, papers, and documents it is agreed shall be given up to the Steam-ship Company. (2) The Steam-ship Company shall take such property subject to the several rights and equities therein subsisting, and, in particular, to the discharge of the several liabilities appearing in the said books, papers, and documents; and to all other liabilities, if any, of the Navigation Company to which said property is now subject. (3) As to all such parts of said property as shall not be capable of assignment, the Navigation Company and the liquidators will stand seized and possessed of it in trust for the Steam-ship Company, and to be dealt with as the Steam-ship Company may from time to time direct. (4) The property so agreed to be conveyed, shall, subject to said debts and liabilities of the Navigation Company, and subject to the rights and equities affecting it, be held by the Steam-ship Company, subject to the primary obligation of discharging all expenses connected with the dissolution and winding up of the Navigation Company, and all the liabilities to be incurred by the liquidators, as such, and all moneys necessary for the purchase of the interest of any dissentient member of the Navigation Company who shall be entitled to have his interest purchased under the companies' act, 1862, and all moneys which the liquidators may pay in pursuance of any arrangement or compromise with any member of the Navigation Company, and subject to said payments for the benefit of the Steam-ship Company. (5) The Steam-ship Company will allot to the liquidators so many of its fully paid-up shares and preferential shares as will enable them to carry out the arrangement so proposed to the members of the Nav'gation Company. (6) The liquidators will allot said shares to the members of the Navigation Company whose names appeared on the register of that company on the fifteenth of August, 1867, willing to accept the same, in the proportion of three shares of £10 each, fully paid up, and one preferential share of £10, in the Steam-ship Company, for one share of £100 in the Navigation Company, with £30 paid up. (7) The liquidators shall do all things necessary to pay for purchasing such interest of any dissentient member, and shall dispose of the shares in the Steam-ship Company to which the dissentient member would, but for his dissent, be entitled. (8) The Steam-ship Company will pay the several liabilities disclosed in said books, papers, and documents, and all other debts, if any, of the Navigation Company, and will devote and apply the real and personal property so to be made over to them to that purpose. (9) The Steam-ship Company will save harmless and keep indemnified the liquidators from all liabilities in their capacity as such liquidators. (10) In case of dispute the matter in difference shall be settled by arbitration.

When this agreement was made the Navigation Company

owned and was in possession of eight steam-ships, named the Queen, Denmark, England, Helvetia, Erin, Pennsylvania, Virginia, and Louisiana. On the sixteenth of August, 1867, after the making of the agreement, the liquidators delivered the said eight steam-ships to the steam-ship company. From that time forward the latter company dealt with said ships as its own property, and managed them, and received the freights, and entered them in its own name in clearances, and advertised them in its own name, and acted as owner of them. The Navigation Company ceased to do business on the sixteenth of August, 1867. The Steamship Company commenced business on that day, and opened a set of books, in which its transactions were entered. The whole of the officials of the Navigation Company became officials of the Steam-ship Company. There was at the time no formal written transfer or bill of sale of the vessels made, other than said written agreement.

"The Steamship Company, limited," was incorporated by that name, under the companies' act, 1862, on the first of July, 1867. With the sanction of a special resolution passed by it, and with the approval of the board of trade, its name was, under section 13 of the said act, changed, and it was thereafter called "The National Steam-ship Company, limited," and its new name was entered on the register of joint-stock companies, accordingly, by the registrar of joint-stock companies, and he gave a certificate to the above effect on the eighth of August, 1867. On the fifteenth of April, 1869, the secretary of the National Steam-ship Company, limited, addressed a letter, under the seal of that company, to the registrar of shipping at the custom-house at Liverpool, requesting that the said eight steamers "at present registered in the name of the National Steam Navigation Company, limited, be transferred to the National Steam-ship Company, limited, the first-named company having been reconstituted under the latter name, and being in process of liquidation." This application was accompanied by a certificate of the incorporation of the Steam-ship Company, limited, and a certificate of such change of its name to the National Steam-

ship Company, limited.   The application was submitted by the custom-house at Liverpool on the same day to the board of commissioners of customs, as an application that the eight vessels then standing in the name of the National Steam Navigation Company, limited, might be registered "under the title of ' The National Steam-ship Company, limited,' as sanctioned by the annexed certificate of incorporation."   On the seventeenth of April, 1869, the chief registrar of shipping signed a paper in which he said:

" The evidence of change of name of the company being satisfactory, as shown by the enclosed certificate of incorporation, I submit that the several registers of the vessels may be noted as requested."

On the same day it was so ordered by the board of commissioners of customs.

The records of the registry of shipping, in the custom-house at Liverpool, do not show any document of record there making any change of ownership of any of the vessels from the National Steam Navigation Company, limited. Those records show the following facts, among others, as to the registry in that office of the vessels:

The Virginia, the Denmark, and the Louisiana were conveyed to the National Steam Navigation Company by bills of sale, and were thereupon registered in its name prior to 1869.   The Pennsylvania, Erin, Helvetia, the Queen. and England were registered in the name of that company, as original owners, prior to 1869.   In the record of the registry of each of the eight vessels the following entry appears : "Ownership altered to ' The National Steam-ship Company, limited,' per board's order, dated seventeenth April, 1869, from ' The National Steam Navigation Company, limited :' " and, under the head of " names of owners," the following : " The National Steam-ship Company, limited ; total, nineteenth April, 1869."

On this alteration of ownership on the registry, no new register or certificate of registry was taken out by or issued in respect of any one of the eight ships, but the old registers issued to the National Steam Navigation Company, limited, prior to 1869, remained outstanding, and were surrendered up and cancelled,—one in 1870, two in 1871, four in 1872, and one in 1874,—seven new registers for seven of the vessels being taken in the name of the National Steam-ship Company, limited, on alteration of tonnage, and three of the vessels, one of which was the Pennsylvania, being sold to foreigners.

The Navigation Company was finally dissolved in November, 1870.

On the thirty-first of October, 1867, the plaintiff in this suit commenced an action at law in the superior court of the city of New York against the National Steam Navigation Company. The complaint in that suit alleged that the defendants in it "are" a British corporation, "and at the times hereinafter mentioned, being such corporation, owned and sailed a line of ocean steamers between New York and Queenstown and Liverpool." The cause of action set forth was the death of the plaintiff's intestate on the twenty-fourth of October, 1867, caused by a collision on that day, in the harbor of New York, between a canal-boat on which he was and the steam-ship Pennsylvania, "belonging to the defendants," which occurred through the negligence of the steam-ship, her master, and crew. The claim was for $5,000. The National Steam Navigation Company, as defendant in the suit, appeared by attorney and answered the complaint. The answer admits that the defendants "were created" a British corporation, and that a collision took place between the Pennsylvania and certain canal-boats, and denies all the other matters stated in the complaint "severally and specifically." The answer was sworn to December 16, 1867, by Francis W. J. Hurst, who makes oath "that he is the only managing agent, in the United States, of the defendants." The cause was tried before a jury, May 12, 1868, and resulted in a verdict of $2,000 for the plaintiff. On this verdict a judgment was entered June 23, 1868, in favor of the plaintiff, against the National Steam Navigation Company, for $3,289.05 damages, costs, and disbursements. That judgment has never been reversed or paid. On the eleventh of December, 1869, the plaintiff assigned the judgment to Asa F. Miller. In January, 1870, Miller brought a suit in the supreme court of the state of New York against defendant in this suit, the National Steam-ship Company. The complaint sets forth—

The recovery of the judgment, the issuing of an execution on it, the return of said execution wholly unsatisfied, and the assignment of the judgment to Miller; that the Navigation Company was a British corpo-

ration, and a short time before the bringing of the suit in which the judgment was recovered was engaged in a very extensive shipping business between New York and Liverpool with steamers, and having a general agency, with offices, in the city of New York; that at the time of the accruing of the cause of action on which the judgment was obtained the defendant in said action was doing business in New York under the corporate name of the National Steam Navigation Company; that about the time of the recovery of the judgment the Navigation Company suddenly assumed a new corporate name in this jurisdiction, and became thereafter known as the National Steam-ship Company, "the defendant in this action," and the sheriff was, by such change of name, disabled from levying on the same property which had until said time stood in the name of the Navigation Company; that said change of name was effected merely for the purpose of making an alteration in, and curing a technical defect of, the deed of settlement of the Navigation Company; that on the occasion of said operation the Navigation Company handed over all their property to the Steam-ship Company, it being fully adequate to satisfy said judgment; that the Steam-ship Company received the assets of said judgment debtor, and remained under the same control, and has never changed its identity; and said change of corporate name was fraudulently interposed in this jurisdiction to prevent a levy under said execution; that the Steam-ship Company has ample assets of the Navigation Company, and, as to them, is merely trustee for the Navigation Company and its creditors; that the latter company is not, and has not been for the space of about one year, within the state of New York, and has no property therein, except the property standing in the name of the Steam-ship Company; and that the latter company has property within this jurisdiction belonging, as above described, to said judgment debtor.

The prayer of the complaint is for judgment that the Steam-ship Company pay said judgment. That company appeared in said suit and answered the complaint. The answer admits the recovery of the judgment and the issuing and return of the execution. It admits that the Navigation Company was a British corporation. It alleges that the Steam-ship Company is a distinct and separate British corporation. It admits the sale, transfer, and delivery by the Navigation Company, on the fifteenth of August, 1867, to the Steam-ship Company, of their steam-ships and business; that the Navigation Company, up to that time, carried on a large shipping business between New York and Liverpool with steamers; and that the Navigation Company has no property within the state of New York. It denies, generally and specifically, every material allegation in the complaint not expressly admitted in the answer. The answer was sworn to

February 19, 1870, by Francis W. J. Hurst, who makes oath
"that he is the sole managing agent, in the United States, of
the defendants." The suit brought by Miller was tried at
special term, September 1, 1873, and an order made in it that
day states that the action was "brought on for trial," at a spe-
cial term of the court, "upon the pleadings and proofs," and
that, on hearing counsel, "on a motion to dismiss the com-
plaint," it is ordered that the complaint "be dismissed, with
costs to the defendant." The judgment thereon was entered
October 20, 1873, and states that the action came on in its
regular order on the calendar on December 12, 1870; that
after hearing counsel it was ordered that the complaint be
dismissed, with costs to the defendant; and that the defend-
ant have judgment against the plaintiff for $200.84, costs and
disbursements. The plaintiff appealed to the general term,
and the judgment was by it affirmed on the seventh of May,
1875. The case is reported in 4 Hun, 654. It is there
stated, and it also so appears by the bill of exceptions taken
at the trial, that at the trial the plaintiff amended his com-
plaint by striking out such matters as might be inconsistent
with such amendment, and by inserting instead thereof alle-
gations that the Steam-ship Company and the Navigation
Company were separate and distinct corporations, and that
the former accepted the latter's property with distinct agree-
ment to pay the latter's debts; that the answer was then so
amended as to deny those allegations generally; that the
plaintiff put in evidence the judgment-roll of the judgment,
and proved the issuing of the execution and its return unsat-
isfied, and then gave evidence tending to show—

That the defendant in the action was incorporated July 1, 1867, by the
name of "The Steam-ship Company, limited;" that on the eighth of
August, 1867, its name was changed to "The National Steam-ship Com-
pany, limited;" that the Navigation Company, preparatory to a dissolu-
tion of that corporation, transferred all its property to two liquidators,
under the provisions of the companies' act, 1862; that said liquidators
transferred all of said property to the Steam-ship Company on the six-
teenth of August, 1867; that on that day the Navigation Company ceased
to do business and commenced to wind up its affairs; and that such trans-
fer was made substantially upon the agreement and condition that the
Steam-ship Company should take such property subject to the rights and

equities therein subsisting, and, in particular, to the discharge of the several liabilities appearing in the books, papers, and documents of the Navigation Company, and to all other liabilities of the last-named company to which said property was then subject, and would pay in due course the several liabilities disclosed in said books, papers, and documents aforesaid, and all other debts, if any, of the Navigation Company, and would apply the property so to be made over to them for that purpose.

### The report then proceeds:

"The general term was of opinion that as the liability to the plaintiff's assignor for an injury which occured to her intestate on the twenty-fourth of October, 1867, could not appear in the books, papers, and documents of the National Steam Navigation Company on the 16th of August preceding, nor be then a debt or liability of that company which was or could be assumed by the present defendant, and as, when the injury occurred, the National Steam-ship Company was the owner of the steam-ship Pennsylvania, engaged in its navigation, and the alleged wrongful act and negligence were its own, and not those of the corporation which was sued, neither on sound law nor logic could it be held that, by the agreement made on the transfer of the property, defendant bound itself to pay its liabilities that might thereafter spring out of the wrongful acts and negligence of its own servants, nor did the agreement contemplate or provide for liabilities of that kind which might be asserted by actions improperly brought against the company, which had ceased to do business, and was existing only in the process of winding up its affairs, and that therefore the complaint was properly dismissed, and that the judgment should be affirmed, with costs."

The bill of exceptions in the case shows that the said agreement of August 16, 1867, was put in evidence. On the fifth of May, 1876, an order was made by the supreme court of New York, in the suit of *Miller* v. *Steam-ship Co.*, which order, on the consent of the respective parties, discontinued the action without costs to either party. On the seventh of January, 1874, Miller assigned to Henry Morrison his interest in the suit he had brought and in the said judgment. On the sixteenth of February, 1877, Morrison assigned the judgment to the plaintiff in this suit.

In November, 1867, the plaintiff in this suit filed a libel in admiralty, *in rem*, against the steam-ship Pennsylvania, in the district court of the United States for the southern district of New York, alleging—

That her intestate and a certain corporation were the owners of a canal-boat, which, on the twenty-fourth of October, 1867, was struck and sunk

in the harbor of New York by said steam-ship, through the negligence of the persons navigating her; that the canal-boat became a total loss, and the said intestate was then and there drowned; that the said intestate's loss, by losing his part of the boat and property on board belonging to him, was $938.50, and that the administratrix was entitled to recover that amount, and the other libellant $600, against the steam-ship. The libel alleged that the libellants had applied "to F. W. J. Hurst, agent of the National Steam Navigation Company, owners of said steam-ship, the said owners being" "a British corporation," and requested him to settle with them for said damages, but he denied that there was any liability on the part of the said steam-ship for the said damages.

On the twenty-ninth of November, 1867, the proctor for the administratrix signed a stipulation in the suit, providing that service of process of attachment against the vessel be waived, if the claimants would file a claim and bond the vessel, "the bond to be signed by F. W. J. Hurst, manager of the National Steam-ship Company, owner of the said steam-ship," and by a surety, and if the claimants would answer the libel by a day named. On the same day the National Steam-ship Company filed a claim to the vessel in the suit, averring "that the company above named [the National Steam-ship Company] are the true and *bona fide* owners of the said steam-ship." This claim was sworn to on that day by F. W. J. Hurst, as "manager of the National Steam-ship Company," to the effect that the claim was true of his knowledge. On the same day "the National Steamship Company, by F. W. J. Hurst, manager," executed and filed a bond for value in the suit, to the marshal, for the release of the vessel, and also a bond for costs. On the thirty-first of December, 1867, the National Steam-ship Company filed an answer to the libel, averring that "the claimants are and were the true and only owners of the said steamer Pennsylvania at the several times stated in the libel," and raising an issue as to the negligence alleged. The case was tried in the district court on the merits, and on the twenty-sixth of April, 1869, the court dismissed the libel, with costs. 3 Ben. 215. On an appeal by the libellants to this court it made the same decree.

The facts herein above set forth are those which appear from the proofs in this suit. This suit was commenced in the

supreme court of New York, by the service of a summons and a copy of a complaint, on the twenty-fourth of February, 1877. On the petition of the defendant the suit was removed into this court, an order of removal having been filed in the state court September 10, 1877. The record, on removal, was filed in this court October 15, 1877. Pursuant to an order of this court, made June 11, 1878, the plaintiff filed in this court a bill in equity herein. The bill sets forth—

The agreement of August 16, 1867; the recovery of the judgment for $3,289.05; the various assignments of it; and the issuing of the execution and its return unsatisfied on the twenty-fifth of August, 1868. It avers that thereafter the Navigation Company transferred certain property belonging to it to the Steamship Company, in fraud of the right of the plaintiff to have said judgment paid; that the Navigation Company, when the cause of action on which the judgment was obtained accrued, and when the judgment was recovered, and when the execution was issued and returned, owned the said eight steam-ships, and had not, at those times, made any change of ownership or sale whatever thereof, by bill of sale, according to the laws of Great Britain, and had not otherwise then made any lawful change in the ownership or sale of any of them; that the Navigation Company, from on or about August 16, 1867, was engaged in winding up under the companies' act of 1862; that its winding up was terminated July 12, 1870; that the dismissal of the complaint in the suit by Miller was without finding any facts or conclusions of law; that the order of discontinuance was entered therein; that the defendant in this suit is a corporation existing under the companies' act of 1862; that the general manager, the secretary, and treasurer, the chairman of the board of directors, and the same individuals as directors of the Navigation Company, became, on the formation of the defendant, the officers and the identical officials of it; that it has not paid said judgment; has kept possession of said property in fraud of the plaintiff's right to have said judgment paid pursuant to the provisions of said agreement, and otherwise in disregard of the plaintiff's rights; that the Navigation Company has no property but that embraced in said transfer thereof by it to the defendant; and that unless said property and the proceeds thereof can be reached and applied to the payment of said judgment, it will remain unpaid. The bill prays for a sale of so much of said property as may be necessary to pay said judgment, and for such further or different relief as may be meet.

The answer sets up—

That on the sixteenth of August, 1867, the Navigation Company sold and delivered to the defendant all its property, for a full consideration paid by the defendant, and that at that time the defendant became the owner of all said property, including said eight steam-ships, and has ever since owned them, but has rebuilt the Pennsylvania and two of the others, and

changed the names. It denies that the transfer was in fraud of the plaintiff's rights. It avers that, before the said judgment was recovered, the Navigation Company had sold and delivered to defendant, by good and sufficient instruments, all of the said steamships, and ceased to own either of them, and the defendant became sole owner of each of them; that in the Miller suit the merits were tried; that by the judgments therein the cause of action set forth in the bill herein was finally and absolutely disposed of, and is *res adjudicata* as between the plaintiff and the defendant; that the said order of discontinuance in no way affects the finality of said judgments; that the plaintiff has no right to have her original judgment paid by the defendant; or out of any property sold or delivered to it by the Navigation Company; that the collision set up as the cause of action in the suit in admiralty was the identical collision set forth in the. complaint in the suit in the superior court as the foundation thereof; that the defendant, as owner of the Pennsylvania, appeared and claimed and bonded and answered in the suit in admiralty, and had a decree in its favor, after a trial on the merits, and a like decree in this court, on appeal; and that said decree still stands.

The bill in this suit proceeds upon the allegation and the ground that after August 25, 1868, the property of the Navigation Company was transferred to the defendant, and that when the execution was returned, on August 25, 1868, the Navigation Company · owned the - eight ships, because no change of ownership or sale of them had been before that made by bill of sale according to British law, or otherwise lawfully. · The only transfer shown is the transfer by delivery on the sixteenth of August, 1867, and the instrument of that date. The bill does not allege that no transfer was ever made, but that a transfer was made after the execution was returned. The transaction thus alluded to in the bill as a transfer can, according to the proofs, mean only the alteration of the registered ownership of the vessels in April, 1869. The instrument of sale and delivery referred to in the answer, as made before the judgment was recovered, must mean the instrument of August 16, 1867. The Miller suit was tried on the averment, in the amended complaint therein, that the two companies were distinct corporations, and that the Steamship Company accepted the property of the Navigation Company with a distinct agreement to pay its debts; and that the property was handed over about the time the execution was issued. The questions arise, therefore, whether the change of registry was the first transfer of title to the ships, as be-

tween the two companies and as respects the plaintiff, or whether the execution of the instrument of August 16, 1867, and the delivery of the ships thereunder, was such a transfer of title.

It is plain that the companies were two distinct corporations. The bill does not allege otherwise. There was no change of the name of the Navigation Company to the name of the Steamship Company. The instrument of August 16, 1867, shows there were two corporations, and so does all the evidence, and so does the bill. The consideration in that instrument for the sale of the property was a good and valid one; and the subsequent dealing of the grantee with the property, unquestioned, must be accepted as evidence that the Steam-ship Company performed its covenants as to its shares to be issued to the shareholders in the Navigation Company, and thus paid the consideration. When paid, it related back to the delivery of the property, which was August 16, 1867. The title of the Steam-ship Company to the ships became an equitable title to them, as of that date, so far as any cause of action growing out of said collision is concerned. What other title, by bill of sale or otherwise, the Steam-ship Company might have found necessary, in suits brought by it, or to protect themselves against a subsequent *bona fide* purchaser of the ships, without actual notice, or notice by a change of name on the registry, is of no importance in this suit. The old English statutory rule that no transfer of a ship was valid or effectual for any purpose, in law or equity, unless such transfer was by bill of sale, containing a recital of the certificate of registration, has been abolished; and by section 3 of the act of July 29, 1862, (25 and 26 Vict. *c.* 63,) it was provided that, with certain exceptions, not important to this case, equities might be enforced against owners of ships, in respect of their interest therein, in the same manner as equities might be enforced against them in respect of any other personal property. The instrument of August 16, 1867, accompanied by a delivery of the ships, was a sufficient transfer of the title of the ships, as respected the cause of action growing out of the collision, to have sustained

against the Steam-ship Company the suit *in personam* which was brought against the Navigation Company. It was sufficient to warrant the Steam-ship Company in asserting, in its claim in the suit in admiralty, filed November 29, 1867, that it was then the owner of the Pennsylvania, and in asserting, in its answer in the suit in admiralty, December 31, 1867, that it was the owner of the Pennsylvania when the collision occurred on October 24, 1867. It thereby gave full notice to the plaintiff of its ownership of the vessel at the time of the collision. This notice was notice that the Navigation Company was not the owner of the vessel at the time of the collision. The complaint in the suit in the superior court, verified October 30, 1867, had alleged that the Pennsylvania belonged to the Navigation Company at the time of the collision. The answer in that suit, verified December 16, 1867, by its general denial, in connection with its simple admission that the Navigation Company was created a British corporation, was not only consistent with the claim in the admiralty suit before put in, but with the answer in the latter suit afterwards put in. With these facts before it, that the Navigation Company was not claiming that it owned the vessel at the time of the collision, and that the Steam-ship Company was claiming that it owned the vessel at that time, and that the Steam-ship Company was not a party to the suit in the superior court, the plaintiff went on with that suit to judgment, thus making the suit not only, in the language of the general term in the Miller suit, one improperly brought against the Navigation Company after it "had ceased to do business and was existing only in the process of winding up its affairs," but one persisted in not by mistake, but after full record notice that another corporation, and not the one sued, owned, at the time of the disaster, the vessel which caused it.

The plaintiff sued the Navigation Company, in the superior court, as having owned the vessel at the time of the collision. There was never, in that suit, any allegation as to any identity between the two companies, or any continuance of the one under the name of the other. The Miller suit, as tried, was tried on an allegation in the complaint that the two com-

panies were distinct corporations, and that the obligation of the second company to pay the plaintiff's judgment arose out of an agreement by it, which accompanied the transfer of the property, alleged to have occurred about the time the execution was issued, to pay the debts and liabilities of the first company. The bill in this case goes upon the view that there were two separate corporations, and a transfer of the property by the one to the other after the return of the execution, and not at all upon the ground that the one became the other, or that there was any identity of the two, or any continuance of the one under the name of the other, although the officers and the officials of the one became those of the other when the latter was formed. The fact of the entry on the registry, as to each ship, on the nineteenth of April, 1869, that the ownership of it had been altered to the Steam-ship Company from the Navigation Company by the board's order of April 17, 1869, and that from the former date the former company was the registered owner, has no bearing on the rights of the parties to this suit as respects the subject-matter of it. Whether the board had any right, under the facts before it, to authorize the new registry is immaterial. It seems quite probable, from the papers, that the thing was done by mistake. The secretary of the Steam-ship Company stated in his letter that the steamers were registered in the name of the Navigation Company, and that that company had been reconstituted under the name of the Steam-ship Company, and was in process of liquidation, and he requested that the steamers might be transferred to the Steam-ship Company. The meaning of the statement was that by the reconstitution the steamers had become the property of the Steam-ship Company. This was a fact. The reconstitution was by the agreement of August 16, 1867, and acts done under it; and thereby, and by the delivery over of the steamers, they had become the property of the new company. The request merely was that the registry might be changed from the name of the old company to the name of the new company. With this letter were presented the certificates of the incorporation of the new company and of *its* change of name. The agree-

ment of August 16, 1867, which really, in connection with the delivery of the vessels, amounted to a bill of sale of them, does not seem to have been presented as it should have been. The letter from the custom-house at Liverpool to the board of commissioners of customs, submitting to them the above-named letter and the certificate, as an application that the vessels might be registered in the name of the Steamship Company, spoke of the application as being one "sanctioned by the annexed certificate of incorporation." No such thing was sanctioned by the certificates. What they would have sanctioned would have been a change of the registry from the name of "The Steam-ship Company, limited," to the name of "The National Steam-ship Company, limited," if the vessels had been registered in the name of the former company. The chief registrar seems to have regarded the application as one for such a change, for, in the paper signed by him, he says that "the evidence of change of name of the company being satisfactory, as shown by the enclosed certificates of incorporation," the registers may be noted as requested. The only evidence of change of name he had in the certificates submitted was a change from the first name of the new company to the second name of the new company, and his conclusion thereon that the request might be granted could only legitimately have been a conclusion that the vessels, being registered in such first name, might be registered in such second name. He must have overlooked the fact that the vessels were registered in the name of the Navigation Company. The matter having thus passed the routine, the order of the board was made by simply writing on the papers the words "ordered," with the initials "T. F. F." The proper paper being then sent to the custom-house at Liverpool, and the thing ordered being that the registers might be noted as requested, and the request being that the registry might be transferred from the Navigation Company to the Steam-ship Company, this was done. But, as said before, whether this was a mistake, or done without authority, or done on insufficient evidence, is of no consequence here. It was not done on any papers showing any identity between the Navigation

Company and Steam-ship Company. The statement that the former company had been "reconstituted" under the name of the latter company was not accompanied by any evidence as to how such reconstitution had taken place, and certainly not by any evidence that there had been merely a change of name, still leaving an identity of corporate being. The instrument of August 16, 1867, if presented, would have shown the contrary. Even if, in order to justify the act of the board, it may be held to have acted on the assumption that the two companies were identical, that is of no importance to this case, because the registered title to the vessels is of no importance in this case. The companies were not in fact identical, and the true view of the transaction between them, as affecting this case, has been before defined. The defendant did not obtain the vessels by means of the registry, so far as any rights involved in this suit are concerned, and it is, therefore, not now asserting anything which it ought not equitably to assert.

Whether the plaintiff could have relief in the superior court by an application to make this defendant a party to the suit and judgment so as to be bound by them, and to make its property subject to an execution on the judgment, is a question not involved in this suit and not before this court.

There is no provision in the instrument of August 16, 1867, which makes the defendant liable to pay this judgment. It was not a liability of the Navigation Company on the sixteenth of August, 1867, nor is it founded on any liability which then existed or had accrued. It is not founded on any matter which arose in the liquidation of the Navigation Company. Under the terms of the winding-up resolution of July 9, 1867, the winding up of that company commenced "as and from" the fifteenth of August, 1867. Under section 131 of the companies' act, 1862, (25 and 26 Vict. *c.* 89,) a company voluntarily winding up is required, from the date of the commencement of such winding up, to cease to carry on its business, except in so far as may be required for the beneficial winding up thereof, although its corporate state and all its corporate powers continue until its affairs are wound up. By section

the liquidators, who were appointed by the resolution of July 9, 1867, took the place of the directors, and all the power of the directors ceased after the fifteenth of August, 1867. Therefore, although the Navigation Company continued to be a corporation after August 15, 1867, neither its directors nor any agent could, after that date, represent it by any act, in any suit, in respect of a cause of action which accrued after that date, especially one arising after it had parted with all its property, including the vessel out of whose navigation the cause of action arose.

There was, therefore, no identity between the two companies for the purpose of the equitable satisfaction by the new company of the judgment against the old company. In respect to causes of action arising after August 15, 1867, the defendant did not take the property as trustee for the old company, or for persons who might have such causes of action, but took it as its own, liable to respond itself in suits directly against itself, and only in such suits for such causes of action. Identity of business, and adoption of individual officers and officials, and the use of the old property, and the action of Mr. Hurst in calling himself, on December 16, 1867, the "only managing agent in the United States" of the Navigation Company, cannot vary the case. As has already appeared, the ownership of the vessels was not vested in the Navigation Company when the plaintiff's judgment was recovered or when her cause of action accrued.

On the foregoing premises it is not true, as is contended by the plaintiff, that the judgment against the Navigation Company, though involving the question as to whether the Pennsylvania belonged to that company at the time of the collision, is *res adjudicata* as against the Steam-ship Company. The fact that the latter company was transferee of the Pennsylvania did not make it either a party or a privy to the suit, or a trustee for the old company in respect of the cause of action, the suit being one *in personam*. The Steamship Company had no right to defend the suit or to control its proceedings. The Pennsylvania was not seized in the suit. When, after the judgment, its property was sought to

be taken on the execution, it interposed its claim of ownership. It had asserted its ownership of the Pennsylvania in the admiralty suit, as was necessary, because the suit was *in rem*. It was not a party to the *in personam* suit, and in that suit the Navigation Company had denied that the Pennsylvania was owned by that company. There was nothing in the *in personam* suit, before execution, which could affect the title of the Steam-ship Company to any of the property it had received. It had no interest in the result of the suit, and the facts that Mr. Hurst had notice of the suit, and that the same attorney who appeared for the claimant in the admiralty suit appeared for the defendant in the *in personam* suit, are of no legal importance. The fact that Mr. Hurst or the attorney did not set forth specifically in the answer, in the *in personam* suit, that the vessel was the property of the Steam-ship Company at the time of the collision, cannot affect the defendant in this suit. Mr. Hurst denied in the answer that the vessel belonged to the Navigation Company at the time of the collision. In the suit in admiralty he had given the plaintiff full notice of record, 17 days before the answer in the *in personam* suit was put in, that the vessel belonged then to the Steam-ship Company, and, 15 days after that answer was put in, he gave her notice of record, in the suit in admiralty, that the Steam-ship Company owned the vessel at the time of the collision.

The view is presented by the plaintiff that section 133 of the companies' act, 1862, provides that the liquidators shall pay the debts of the company; that this debt became a debt of the company by judgment before the final winding up in 1870, and that before the dissolution of the corporation; and that the property of the old company, placed by the liquidators in the hands of the new company, must be regarded as held by it in trust to pay all debts which should become such against the old company before its final dissolution. The answer to this view is that this claim cannot be properly considered a debt of the old company to be paid by the liquidators, merely because the claim went into judgment against the old company. In view of all the facts, there never was any cause of action

against the old company, and the new company was not a party to and is not bound by the judgment. The plaintiff has no lien on, or a claim against, or equity in respect of, any property received by the defendant which she is entitled to enforce in this suit.

There is nothing in the point that Rowe and Dixon are not parties to this suit. No such objection is taken in the answer. It was previously taken by plea and overruled. It is very clear that they are not necessary or proper parties. The company has been wound up and dissolved, and their functions are ended. No relief is prayed in regard to them.

The defendant contends that the questions in this suit are *res adjudicata* between the parties by reason of the judgment in the Miller suit. The plaintiff, citing *Harris* v. *D., L. & W. R. Co.* 61 N. Y. 656, contends that the discontinuance of the suit after judgment destroyed the effect of the judgment. It is not necessary to pass on this point.

The proceedings in the admiralty suit cannot operate as *res adjudicata*. They are not so pleaded. The cause of action was different from that in the *in personam* suit, and the judgment in the latter suit was recovered before the decree in the admiralty suit was entered.

I have carefully considered all the questions in this case, and the conclusion is that the bill must be dismissed, with costs.